IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEVON ANTHONY BROWN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 16-624-RGA |
| | : |
| DELAWARE DEPARTMENT OF | : |
| LABOR, et al., | : |
| | : |
| Defendants. | : |

Devon Anthony Brown, New Castle, Delaware.  Pro Se Plaintiff.

## MEMORANDUM OPINION

October 26 , 2016
Wilmington, Delaware

Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Devon Anthony Brown filed this action on July 22, 2016. He appears *pro se* and has been granted leave to proceed *in forma pauperis.* (D.I. 4). The Court proceeds to review and screen the complaint and amended complaint pursuant to 28 U.S.C. § 1915(e)(2). (*See* D.I. 1, 5).

## INTRODUCTION

According to Plaintiff's complaint (D.I. 2), which was filed in this Court on July 22, 2016, the following has occurred.

On May 11, 2016, Plaintiff filed with the Delaware Department of Labor, Office of Industrial Affairs a charge of discrimination against his employer. He did this by submitting an anti-discrimination intake questionnaire. On May 17, 2016, Plaintiff filed a complaint against a Delaware Department of Labor ("DDOL") employee, which, in essence, seems to have been for rudeness. Plaintiff was told via email that there would be a thorough investigation of his complaint. He alleges nothing further has been received regarding this complaint.

"During the week of June 14, 2016," Plaintiff hand delivered a written complaint to Defendant DDOL. It is not crystal clear what this complaint was about, although it seems to have been a "complaint against the office of Industrial Affairs," and to refer to the events of June 14, 2016. He alleges that, despite numerous telephone calls made to various individuals, Defendant Patrice Gilliam Johnson and her staff did not respond to the complaint and they have "shunned their responsibility by not responding or taking any action."

Plaintiff explains that when he arrived for an appointment on June 14, 2016, to finalize the charge of discrimination against his employer, he discovered that the intake

1

questionnaire did not contain correct information. Plaintiff pointed out the mistakes to Defendant Brenda Sands, an Industrial Affairs representative. Sands asked Plaintiff to write the "brief statement of allegation" for her and her office and Plaintiff responded that he had already provided the necessary information, that there was no indication he was required to make an additional statement, and that he would need time to think about what additional statement he would make. Sands left the office and returned with her supervisor, Defendant Daniel McGannon.

McGannon requested that Plaintiff write an additional statement. McGannon advised Plaintiff to change the charge of discrimination from retaliation to race discrimination and told Plaintiff that the DDOL "may, or may not be the correct jurisdictional place for [the] charge to be filed." (D.I. 2 at 11). Plaintiff, Sands, and McGannon discussed the matter while the DDOL's security officer (named as a defendant) paced the office corridor and peered into Sands' office.

On June 20, 2016, Plaintiff returned to the DDOL to finalize the charge of discrimination against his employer and spoke to the DDOL security officer who gestured for Plaintiff to come to him. The security officer's actions made him uncomfortable. The security officer "shadowed" Plaintiff to his meeting with Sands. When Plaintiff met with Sands, he advised her that he had filed a complaint against her, her supervisor, and her office requesting different Industrial Affairs representatives. Plaintiff stated that Johnson's assistant had promised him this. During this time, the security officer arrived and sat inches away from Plaintiff, directly in front of him. The security officer told Plaintiff that Sands and the Office of Industrial Affairs were drawing up a document for Plaintiff to sign that permitted the security officer to sit inside the office for the finalization of the charge of discrimination against Plaintiff's employer. The

security officer clasped Plaintiff's hands and touched Plaintiff's right knee. Plaintiff asked the security officer to "stop touching" him.

The security officer returned at a later time with the document for Plaintiff's signature. The document stated that Plaintiff has requested the security officer's presence. Plaintiff alleges the document was false, that he had not requested the security officer's presence, and he was reluctant to sign the document. Plaintiff alleges that the security office stated that, if Plaintiff refused to sign the document, he would not be allowed to file the charge of discrimination against his employer. Sands returned to the office with another document for Plaintiff's signature. That document "essentially gave her and her office power of attorney over [his] charge of discrimination." (*Id*. at 12). The document stated that Sands, the DDOL and the Office of Industrial Affairs could at any time after the finalization of charges against [Plaintiff's] employer change, and edit the form entitled "Anti-Discrimination Questionnaire, and that [Plaintiff's] refusal to sign was signifying [his] noncooperation, and would disallow [Plaintiff] from utilizing" DDOL offices. (*Id*.) Plaintiff objected to the demands and Sands told him that he would not be permitted to file a charge of discrimination against his employer, and that he needed to file it with the EEOC.

Plaintiff asserts that the actions of Defendants harmed him because the DDOL and its employees "dared [him] to react" after inappropriate touching and sexually suggestive behavior by the security officer. He also alleges that he was denied the right to use the Office of Industrial Affairs, DDOL for its intended purpose. Plaintiff seeks compensatory damages and injunctive relief in the form of the charges against his employer moving forward at DDOL, and by forbidding DDOL from disclosing information.

## DISCUSSION

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 U.S. at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989). The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant Plaintiff leave to amend his complaint unless amendment would be

4

inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Liberally construing the complaint as the Court must, Plaintiff appears to raise claims pursuant to 42 U.S.C. § 1983.[1] The Complaint raises what appear to be nonfrivolous and cognizable procedural due process claims against McGannon, Sands,

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person deprived him or her of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

and Johnson for refusing to accept Plaintiff's charge of discrimination against his employer. *See, e.g.*, *New York State Nat'l Org. for Women v. Pataki*, 228 F. Supp. 2d 420, 423 (S.D.N.Y. 2002) (procedural due process violated when intake rules authorized personnel to refuse arbitrarily to accept the filing of valid discrimination complaints). The Complaint also appears to raise a supplemental state law claim for battery against DDOL security officer. *See, e.g.*, *Atamian v. Hawk*, 842 A.2d 654, 660 (Del. Super. 2003) (to state a claim for assault and battery, a plaintiff must allege an intentional, unpermitted contact upon the person of another which is harmful or offensive).

The complaint names the State of Delaware and the DDOL as defendants. The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007). Accordingly, the Court will dismiss the claims against the State of Delaware and the DDOL as they are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

## CONCLUSION

Case 1:16-cv-00624-RGA   Document 6   Filed 10/26/16   Page 8 of 8 PageID #: 34

For the above reasons, the Court will: (1) dismiss the State of Delaware and the

DDOL as they are immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii); and

(2) allow Plaintiff to proceed against remaining Defendants Daniel McGannon, Brenda

Sands, Patrice Gilliam Johnson, and DDOL security officer.

An appropriate order will be entered.