IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DEVON ANTHONY BROWN,                    :
                                        :
            Plaintiff,                  :
                                        :
    v.                                  :       Civ. No. 16-624-RGA
                                        :
BRENDA SANDS, et al.,                   :
                                        :
            Defendants.                 :

---

Devon Anthony Brown, Wilmington, Delaware.  *Pro Se* Plaintiff.

Oliver J. Cleary, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendant Brenda Sands.

**MEMORANDUM OPINION**

July 5 , 2018
Wilmington, Delaware

*[signature]*

**ANDREWS, U.S. District Judge:**

Plaintiff Devon Anthony Brown, who appears *pro se* and has been granted leave to proceed *in forma pauperis,* filed this action on July 22, 2016, followed by an amendment on August 8, 2016. (D.I. 2, 5). Plaintiff and Defendant Brenda Sands have filed cross-motions for summary judgment. (D.I. 23, 26). Briefing on the motions is complete.

## BACKGROUND

Plaintiff raises a due process claim against Sands for refusing to accept his charge of discrimination against his employer.[1] Plaintiff claims he was denied the right to use the Office of Industrial Affairs, DDOL for its intended purpose. He also raises a supplemental state law claim for battery against an unidentified Delaware Department of Labor ("DDOL") security officer.[2] Plaintiff alleges he was harmed because the DDOL and its employees "dared [him] to react" after inappropriate touching and sexually suggestive behavior by the security officer. Plaintiff seeks compensatory damages and injunctive relief in the form of the charges against his employer moving forward and filed through the DDOL and by forbidding the DDOL from disclosing information. (D.I. 3).

During the relevant timeframe, Defendant was an investigator for the DDOL's Office of Anti-Discrimination ("OAD"). (D.I. 27 at Ex. D, Sands aff.). Defendant had several interactions with Plaintiff when he visited Defendant's office to report an alleged

---

[1] All claims against Defendants Delaware Department of Labor, Daniel McGannon, Patrice Gilliam-Johnson, and the State of Delaware have been dismissed. (*See* D.I. 7, 19).

[2] The security officer has not been identified and has not been served.

incident of employment discrimination after he was discharged on the basis of his criminal record. (*Id.* at Exs. C, D). On May 11, 2016, Plaintiff completed a DDOL AOD intake questionnaire. (*Id.* at Ex. C). Defendant reviewed Plaintiff's draft charge of discrimination and indicated there was a grammatical error. (*Id.* at Ex. D). Plaintiff appeared upset when informed of the error and was told this was an opportunity to correct any errors and make deletions or additions to his charge. (*Id.*). Plaintiff noted that retaliation was not on the draft charge and began yelling that his submissions clearly pointed to retaliation. (*Id.*). Plaintiff declined to file a charge of discrimination. (*Id.*).

Plaintiff contacted her supervisor, Daniel McGannon, after the interaction and sent a note to Defendant scheduling a second meeting for June 20, 2016. (*Id.*). Plaintiff was presented with a letter for his signature that confirmed and agreed his intake appointment was set for June 20, 2016, and that a security team member would be present for the intake appointment. (*Id.* at Ex. E). The letter also provided as follows:

> You hereby acknowledge and agree that the purpose of the intake appointment is for you to assist the Department in drafting your charge of discrimination based on your factual allegations. You hereby acknowledge and agree that the Department will not issue a charge of discrimination to your former employer until you have approved, signed, and notarized the charge of discrimination.

(*Id.*).

Security was present at Plaintiff's June 20, 2016 client interview in case he repeated his threatening conduct, although Defendant stated security's presence was not standard operating procedure. (*Id.*). Plaintiff immediately stated that he did not

3

want to meet with Defendant. (*Id.*). Defendant explained her purpose was solely to act as an intake officer to assist with charge filing and she offered to review reworking of Plaintiff's charge or allow him to submit his own attachment since he was dissatisfied with the department's working on his charge. (*Id.*). Plaintiff made several comments to the security officer that he was dissatisfied with Defendant's handling of the charge filing appointment and that he had previously reported this to management. (*Id.*). Retaliation was added to the charge as requested by Plaintiff. (*Id.*).

According to Defendant, she ended the appointment because Plaintiff's manner escalated to the point of making derogatory complaints directed at Defendant including demeaning black women, the elderly, and dissatisfaction with her explanation of the charge filing process in general. (*Id.*). Defendant asked Plaintiff to discontinue his derogatory statements during the charge filing appointment so that his charge could be finalized. (*Id.*). Plaintiff responded by stating he had made several complaints to management, the governor and others about the OAD process. (*Id.*). The meeting ended with Plaintiff stating, "you can go to hell." (*Id.*). Plaintiff's charge of discrimination was completed, but not finalized with his signature. (*Id.*).

According to Defendant, because of Plaintiff's repeated hostile and abusive behavior, McGannon made a recommendation to the Secretary of Labor to ban Plaintiff from the OAD building. (*Id.*). McGannon sent a letter to Plaintiff, dated June 22, 2016, that advised Plaintiff he was no longer permitted on the DDOL's premises as a result of his prior conduct. (*Id.*). The letter directed Plaintiff to seek additional assistance for processing his charge of discrimination with the offices of the Equal Employment Opportunity Commission in Philadelphia, and the letter provided Plaintiff EEOC contact

4

information including the EEOC's address, telephone number, and website. (*Id*.). According to Defendant, this is a viable alternative arrangement because the EEOC and the OAD have a work-sharing agreement that permits transfers of claims. (*Id*. at Ex. D; *see also id.* at Ex. B (2015 worksharing agreement between Delaware Department of Labor and the U.S. Equal Employment Opportunity Commission)).

Defendant served requests for admissions upon Plaintiff on October 25, 2017. (D.I. 22). Plaintiff did not respond or object to the requests and they are deemed admitted. *See* Fed. R. Civ. P. 36(a)(3). Plaintiff admits that McGannon and Defendant offered to assist him in finalizing a charge of discrimination against his former employer. (D.I. 22, Request No. 6). Plaintiff admits that he refused to sign an agreement that he "acknowledge[d] and agree[d]" that the DDOL would not issue a charge of discrimination to his former employer until he "approved, signed, and notarized the charge of discrimination." (*Id*. at Request No. 7). Plaintiff admits that he verbally and physically threatened Defendant and that his ongoing threatening conduct merited a response by the security officer against whom Plaintiff filed a claim. (*Id*. at Request Nos. 9, 11). Plaintiff admits that he has no colorable claims of a violation of his constitutional rights, that he has no constitutional right to enter a government agency and utter threats to a female employee, and that he never suffered discrimination at the DDOL. (*Id*. at Request Nos. 13, 14, 15).

Plaintiff moves for summary judgment on the grounds that: (1) he has adequately alleged violations of his right to due process; and (2) the burden of responsibility for cognizable and non-frivolous claims and for violations of his right to due process is Defendant's. (D.I. 23). Defendant moves for summary judgment on

5

the grounds that: (1) she is entitled to qualified immunity; and (2) the allegations do not constitute a violation of Plaintiff's due process rights.   (D.I. 26, 27).

Plaintiff's motion for summary judgment and his opposition to Defendant's cross-motion for summary judgment consist solely of argument and are not accompanied by sworn affidavits or signed under penalty of perjury.   (D.I. 23, 29).   They cannot be relied upon to defeat Defendant's motion for summary judgment.   *See Byrne v. Monmouth Cnty. Dep't of Health Care Facilities*, 372 F. App'x 232, 233-234 (3d Cir. 2010) (unsworn certification not supported by any documentation or factual testimony is insufficient to defeat summary judgment); *Williams v. Borough of West Chester*, 891 F.2d at 460 (nonmoving party cannot simply assert factually unsupported allegations to meet burden at summary judgment); 28 U.S.C. § 1746 (unsworn declarations may substitute for sworn affidavits where they are made under penalty of perjury).

## STANDARDS OF LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a .matter of law."   Fed. R. Civ. P. 56(a).   An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ. P. 56(c)(1)(A) & (B).   When determining whether a genuine issue of material

6

fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986). The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

## DISCUSSION

Plaintiff seeks summary judgment on the grounds that he has stated "what appear to be cognizable and nonfrivolous claims." (D.I. 23). Defendant seeks summary judgment on the grounds that she should receive qualified immunity. (D.I. 27).

Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as: (1) the official's conduct does not violate "a statutory or constitutional right, and (2) [] the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"A Government official's conduct violates clearly established law when, at the

time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). To determine if a right is clearly established, the Third Circuit directs me to first look for Supreme Court precedent. *Mammaro v. New Jersey Div. of Child Protection and Permanency*, 814 F.3d 164, 169 (3d Cir. 2016). If there is none, then I may rely on a "'robust consensus of cases of persuasive authority' in the Court[s] of Appeals." *Id.* (quoting *Taylor v. Barkes*, __ U.S. __, 135 S. Ct. 2042, 2044 (2015) (per curiam)). "[A]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Court exercises its discretion to decide which of the two prongs of the qualified immunity analysis to address first "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see Mirabella v. Villard*, 853 F.3d 641, 648–49 (3d Cir. 2017). The two-step sequence set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), is often appropriate when analyzing qualified immunity. *Pearson*, 555 U.S. at 236. First, the court examines whether or not the alleged conduct, taken in the light most favorable to Plaintiff, violated a constitutional right. *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* If the

8

allegations amount to the violation of a constitutional right, the court proceeds to the

second inquiry and determines if the right was "clearly established in the specific

context of the case." *See Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533

U.S. at 202 (noting that an officer is entitled to qualified immunity unless "it would be

clear to a reasonable officer that his conduct was unlawful in the situation he

confronted").

As construed by the Court, at issue is whether Defendant violated Plaintiff's right

to due process while assisting him in preparing a charge of discrimination. As

discussed in the Court's screening order, the right to procedural due process may be

violated when authorized personnel arbitrarily refuse to accept the filing of a valid

discrimination complaint. *See, e.g., New York State Nat'l Org. for Women v. Pataki*,

228 F. Supp. 2d 420, 423 (S.D.N.Y. 2002).

The undisputed facts indicate that Defendant sought to assist Plaintiff in drafting

a verified charge of discrimination as set forth by OAD regulations on at least two

occasions. While undertaking this task on June 20, 2016, Plaintiff verbally and

physically threatened Defendant. Despite the events of the day, Defendant assisted

Plaintiff in completing a charge of discrimination until his behavior ended the meeting.

Given the undisputed facts of Plaintiff's behavior, no reasonable jury could find that

Defendant arbitrarily refused to accept the filing of a valid discrimination complaint.

In addition, Plaintiff left the meeting without signing the charge of discrimination.

The charge must be signed under oath to constitute a valid charge of discrimination.

*See* 9 Del. Admin. Code § 1311-1.3.2 ("'verified charge' or 'charge' means a charge of

discrimination that sets forth a concise statement of facts, in writing, verified under oath

9

and signed by the Charging Party"); 42 U.S.C. § 2000e-5(b) (charges shall be in writing under oath or affirmation). As a result, there was no valid charge for Defendant to accept or reject, making it impossible for Defendant to violate Plaintiff's right to due process. *See* 9 Del. Admin. Code § 1311-2.0 ("An action shall be commenced by the filing of a verified charge with the department's Office of Anti-Discrimination.").

Notably, despite Plaintiff's behavior, banning from the AOD office, and his dissatisfaction and unhappiness in working with Defendant, he was provided information for a viable alternative to filing his charge at the OAD office. Plaintiff was given information advising him could file a valid charge of discrimination with the EEOC in Philadelphia, an option available as a result of the work-sharing agreement between the DDOL and the EEOC in Philadelphia.

Finally, Plaintiff failed to respond to Defendant's requests for admissions. (*See* D.I. 22). "Matters deemed admitted due to a party's failure to respond to requests for admission are 'conclusively established' under Federal Rule of Civil Procedure 36(b), and may support a summary judgment." *Secretary United States Dep't of Labor v. Kwasny*, 853 F.3d 87, 91 (3d Cir. 2017). An admission is "'an unassailable statement of fact' and is binding on the non-responsive party unless withdrawn or amended." *Id.* In light of Plaintiff's admissions and the foregoing undisputed facts, no reasonable jury could find that Defendant violated Plaintiff's right to due process.

Defendant's conduct did not violate Plaintiff's constitutional rights. Accordingly, qualified immunity shields Defendant from Plaintiff's claims. The Court will grant Defendant's motion for summary judgment and will deny Plaintiff's motion for summary judgment.

Having determined that summary judgment is appropriate as to Plaintiff's federal claim, the District Court declines to exercise supplemental jurisdiction over the supplemental state claim for battery against the DDOL security officer. *See* 28 U.S.C. § 1367(c). *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 309 (3d Cir. 2003). The DDOL security officer has never been identified or served with process, and therefore has been no discovery into the allegations. Therefore, the claims against him will be dismissed without prejudice.

**CONCLUSION**

For the above reasons, the Court will deny Plaintiff's motion for summary judgment (D.I. 23) and will grant Defendant's motion for summary judgment (D.I. 26). The Court will decline to exercise supplemental jurisdiction over the state law claim and will dismiss without prejudice the claims against the DDOL security officer.

An appropriate order will be entered.